IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| TIM BOND<br>150 WESTMINSTER PIKE<br>REISTERSTOWN, MD 21136<br><br>*on his own behalf and on behalf of*<br>*all others similarly situated,*<br><br>　　　　Plaintiffs,<br><br>v.<br><br>AT & T INC.<br>208 S. AKARD STREET<br>DALLAS, TX 75202<br><br>　　　　SERVE ON:　Department of Assessment and<br>　　　　　　　　　　Taxation<br>　　　　　　　　　　Corporate Charter Division<br>　　　　　　　　　　301 W. Preston Street<br>　　　　　　　　　　Room 801<br>　　　　　　　　　　Baltimore, MD 21201<br><br>　　　　Defendant. | JURY TRIAL DEMANDED<br><br><br><br><br><br>Case No. 1:15-cv-923 |

## CLASS ACTION COMPLAINT

Plaintiff Tim Bond   ("Plaintiff" or "Bond") b r i n g s   this class action complaint individually and in a representative capacity on behalf all others similarly situated (the "Class") against defendant AT&T, Inc. ("AT&T") and its Cricket unit.

**I.　Preliminary Statement**

1.　On July 12, 2013, AT&T announced its agreement to acquire Cricket Communications Inc.

2.      From July 12, 2013 to the present (the "Class Period"), Cricket, both directly and through its authorized agents, has offered for sale and sold to the consuming public CDMA handsets.

3.      Prior to the Class Period, AT&T decided that on or after the acquisition of Cricket, AT&T would discontinue all CDMA service and require all Cricket customers to use AT&T's GSM cellular network.

4.      Prior to the Class Period, Cricket knew or should have known that AT&T intended to discontinue the use of CDMA handsets in favor of AT&T's GSM service.

5.      During the Class Period, Cricket knew, or reasonably should have known, that the CDMA handsets sold would be inoperable as a result of the acquisition by AT&T.

6.      During the Class Period, Cricket affirmatively represented that all CDMA handsets sold were compatible with Cricket's cellular phone service.

7.      During the Class Period, Cricket failed to disclose that these CDMA handsets had an artificially limited useful life and that the phones would not be supported for the expected life of the phone.

8.      Included in the CDMA handsets which rendered inoperable by the AT&T acquisition is the Plaintiff's Samsung Galaxy S4, which he purchased from Cricket in or around December 2013.

9.      Plaintiff asserts claims individually on behalf of the Class.

## II.    The Parties

10.    Plaintiff is a citizen of Maryland currently residing at 150 Westminster Pike, Reisterstown, MD 21136 (Baltimore County, MD). He is a natural person over the age of 21 and otherwise *sui juris*.

11.    Defendant AT&T Inc. is incorporated in the State of Delaware and maintains its corporate headquarters in Dallas, Texas.  On July 12, 2013, AT&T agreed to buy Leap Wireless International, Inc., for $1.2 billion.  As part of the agreement, AT&T would acquire the Leap Wireless subsidiary, Cricket Communications Inc. ("Cricket"), which provided wireless products and services to approximately 4.6 million subscribers.  On March 13, 2014, the Federal Communications Commission approved the merger between AT&T and Leap Wireless.  Since that time, Cricket has functioned as a unit of AT&T.

## III.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

13.    Plaintiff Tim Bond is a citizen of Maryland.   Defendant is a citizen of Delaware and Texas but is registered to do business in Maryland and nationwide.  The amount in controversy exceeds $5,000,000 and there are at least one hundred members of the putative class.

14.    This Court has jurisdiction over Defendant because it either is a foreign corporation authorized to conduct business in Maryland, is doing business in Maryland and has registered with the Maryland Secretary of State, or do sufficient business in Maryland, have

sufficient minimum contacts with Maryland, or otherwise intentionally avail themselves of the Maryland consumer market through the promotion, marketing and sale of wireless products and services in Maryland.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendant and its affiliated or related entities permissible under traditional notions of fair play and substantial justice.

15.    In addition, this Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between Plaintiff and the Defendants.  28 U.S.C. § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d) (2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

16.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in the District of Maryland.

17.    All conditions precedent to this action have occurred, been performed, or have been waived.

## IV.    Factual Allegations

18.    Two of the predominant cellular voice technologies are Global Systems for Mobile communications ("GSM") and Code Division Multiple Access ("CDMA").

19.     GSM was developed by the European Telecommunications Standards Institute to replace the analog networks.  In the United States, GSM is the technology behind AT&T and T-Mobile USA.  Current GSM devices use a Security Identity Module, or SIM, card.  This card contains the International Mobile Subscriber Identity (IMSA) Number, carrier information, and

consumer contact information.  Assuming the phone is not locked by the carrier, the SIM card slot allows the consumer to migrate the phone between carriers.

20.     CDMA was developed by Qualcomm and has been the technology preferred by Sprint and Verizon.  Rather than having a SIM card for data storage, data is stored on the CDMA phone itself.  This has made moving a CDMA phone between carriers difficult, if not impossible.

21.     At all relevant times, Cricket has marketed, offered for sale, and sold handheld devices compatible with the CDMA network.

22.     In July 2013, AT&T reached an agreement to purchase the assets and assume the liabilities of Leap Wireless, the parent of Cricket, for $1.2 Billion.  AT & T retained Cricket's directors and management in addition to its 3,400 employees.  The July 12, 2013 press release of AT&T and Leap Wireless provided, in relevant part, the following information about the acquisition:

> AT&T will acquire all of Leap's stock and wireless properties, including licenses, network assets, retail stores and approximately 5 million subscribers. . . .

> Leap's network covers approximately 96 million people in 35 U.S. states. Leap currently operates -- under the Cricket brand -- a 3G CDMA network, as well as a 4G LTE network covering 21 million people in these areas, and has 3,400 employees.

> AT&T will retain the Cricket brand name, provide Cricket customers with access to AT&T's award-winning 4G LTE mobile network, utilize Cricket's distribution channels, and expand Cricket's presence to additional U.S. cities. The result will be increased competition, better device choices, improved customer care and a significantly enhanced mobile Internet experience for consumers seeking low-cost prepaid wireless plans. . . .

> The acquisition includes spectrum in the PCS and AWS bands covering 137 million people and is largely complementary to AT&T's existing spectrum

licenses.  Immediately after approval of the transaction, AT&T plans to put Leap's unutilized spectrum – which covers 41 million people -- to use in furthering its 4G LTE deployment and providing additional capacity and enhanced network performance for customers' growing mobile Internet usage.

Owners of approximately 29.8% of Leap's outstanding shares have entered into an agreement to vote in favor of the transaction.

The transaction is subject to review by the Federal Communications Commission and the Department of Justice and to other customary closing conditions. AT&T expects the transaction to close in six to nine months.

23.     Thus, according to the July 12, 2013 press release, AT&T intended to move customers from Cricket's CDMA network to AT&T's GSM network and Cricket/AT&T further intended not to support CDMA handsets that could not be migrated to the GSM network.

24.     In fact, many CDMA handsets cannot be moved to a GSM network.

25.     Cricket knew and failed to disclose this material information to customers.

26.     Cricket, moreover, continued to offer for sale and sell to the consuming public CDMA handsets that are not compatible with and cannot be migrated to the GSM network.

27.     Cricket thus knew, and failed to disclose, that many of the CDMA handsets it offered for sale and sold to the consuming public would be rendered inoperable as a result of the AT&T acquisition.

28.     For instance, Plaintiff purchased a Samsung Galaxy 4S from an authorized agent of Cricket in or around December 2013, more than five months after AT&T acquired Cricket.

29.     Thereafter, Plaintiff entered into a wireless service agreement with Cricket to use the Samsung Galaxy 4S on Cricket's CDMA compatible cellular network.

30.     Plaintiff received two different receipts, one for the purchase of the phone and one for the purchase of the wireless service agreement.

31.     In January 2015, AT&T publicly announced that the legacy CDMA markets covered by its Cricket unit will be turned off this year, in a three-phase switch-off plan.  *See https://www.telegeography.com/products/commsupdate/articles/2015/01/09/att-confirms-september-shutdown-of-cricket-cdma-network/.*

32.     As per the AT&T public announcement in January 2015, the CDMA wireless service will be terminated on a rolling basis by bill cycle.  Customers in the initial 'sunset markets' will have their service terminated by bill cycle beginning March 15, 2015 with the CDMA network in those markets being turned off completely on 15 April 2015.   Initial (March/April) sunset markets include: Washington, DC; Little Rock, Fayetteville and Fort Smith (Arkansas); Wilmington (Delaware); Chicago and Northern Illinois (Illinois); South Bend (Indiana); Baltimore (Maryland); Atlantic City (New Jersey); Buffalo, Rochester and Syracuse (New York) and Philadelphia (Pennsylvania).

33.     The second group of markets slated for shutdown in May/June 2015 consists of: Wichita (Kansas); Albuquerque and Las Cruces (New Mexico); Las Vegas (Nevada) and Oklahoma City and Tulsa (Oklahoma).

34.     All remaining legacy CDMA markets will be turned off by mid-September 2015.

35.     Cricket announced that its customers who purchased an iPhone with original CDMA (including the iPhone 4s, iPhone 5, iPhone 5s or iPhone 5c) will receive a free, replacement SIM card that enables the iPhone to operate on Cricket's new 4G and 4G LTE nationwide GSM network.  However, persons who purchased any other type of cell phone from Cricket would be required to purchase a new handset.

36.     As Cricket explained on its website:  "The new Cricket's nationwide 4G network uses GSM (Global System for Mobile Communications) technology that is the global standard for mobile service while the original Cricket uses CDMA network technology. That means that with the exception of original Cricket iPhone 4S, iPhone 5, iPhone 5S and iPhone 5C, your current CDMA phone will not work on the new Cricket network.

37.     In or around February 2015, Plaintiff went into a Cricket store in Maryland to pay his bill for February service.   When Plaintiff was in the Cricket store, Cricket turned his Samsung Galaxy S4 phone off.   Plaintiff attempted to have his phone turned back on through AT&T and other service providers, including Sprint, Virgin Mobile and T-Mobile.   But none was able to revive Plaintiff's phone.

38.     Plaintiff's phone has no value or only a *de minimis* value due to its inoperability on any cellular network.

39.     Plaintiff is not alone.   Indeed, several consumers have made anonymous complaints on the web page forum: *https://forums.att.com/t5/General-Account-Questions/AT-amp-T-Merger-with-Cricket-Sucks/td-p/4096500*, concerning Cricket's failure to disclose that the CDMA handheld devices which it offered for sale and sold to the consuming public as of July 12, 2013, would be inoperable as a result of the AT&T acquisition, including the following:

Blownaway Sep 26, 2014 8:26:33 AM

This merger of AT&T and Cricket is horrible.  First I just bought an expensive Samsung Galaxy S4 not even a year ago and I am being told that I have to buy a brand new phone when the merger is fully complete (March 2015).  This is ridiculous - who is sitting around with an extra $400 a year to purchase a new phone.  As large a company as AT&T they do not have the capability to switch my phone over.

8

SteveJodylynn Oct 29, 2014 12:28:27 PM

I agree. It is just a few months from when my expensive CDMA Cricket smartphone (less than a year old) becomes inoperable and I've heard nothing from AT&T or Cricket about the transition plan, other than I will be forced to shell out hundreds for a new phone that is compatible with AT&T's network.

Chiefsfan Nov 29, 2014 5:43:14 PM

. . . AT&T is screwing over thousands of Cricket customers and they DON'T CARE ONE BIT! Cricket shouldn't have been selling phones over the past 7-8 months, since the merger with AT&T, knowing that they won't work after March, but they continue to do just that. The point is that AT&T is gaining millions of unearned $ by forcing customers to buy new ridiculously expensive phones (oh, but they'll give you a free deal on their piece-o-crap phones (which are all of them other than the Galaxy & iphones) all under the guise of "providing better service". What a crock!! WE ALL NEED TO BOYCOTT AT&T ONCE THEY RENDER OUR PHONES USELESS!!!

hatenewcricket Feb 11, 2015 9:16:13 PM

I know what you mean I got my S4 just befor[e] they annou[n]ced the switch, I believe they knew what was going to happen and sold me an already worthless phone this whole thing has been a rip off and is unfair to cricked customers who are getting screwed

## V.  CLASS ALLEGATIONS

40.  Plaintiff brings this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other persons similarly situated.  Plaintiff seeks to represent the following classes:

> **All persons nationwide during the period July 12, 2013 to the present, who purchased a CDMA handset from Cricket or through its authorized agents.**

Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

41.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

42.     Defendant subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

43.     The Class, as defined above, is identifiable.

44.     The Named Plaintiff is a member of the Class.

45.     The proposed class is so numerous that joinder of all members would be impracticable.  Cricket sold thousands of CDMA handsets during the Class Period in the State of Maryland and nationwide.

46.     The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendant.

47.     While the precise number of class members can only be obtained through discovery, the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.

48.     There are questions of law and fact that are common to Plaintiff's and class members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.

49.     Among such common questions of law and fact are the following:

   a.   Whether Cricket offered for sale and sold to the consuming public CDMA handsets during the Class Period;

   b.    Whether Cricket knew and failed to disclose that the CDMA handsets would be inoperable upon completion of the merger with AT&T;

    c.   Whether Cricket breached the implied covenant of good faith and fair dealing by offering for sale and selling soon to be inoperable CDMA handsets;

    d.   Whether Cricket made material misstatements of fact and/or knew and failed to disclose material information concerning the CDMA handsets which it sold to Plaintiff and other members of the class, including facts that the CDMA handsets would be inoperable as a result of the AT&T acquisition, that Cricket planned to convert to the GSM network and that as a result, the CDMA handsets had an artificially limited useful life;

    e.   Whether Cricket breached the implied warranty of merchantability by selling Plaintiff and the other members of the Class CDMA handsets which it knew had an artificially limited useful life; and

    f.   Whether Plaintiff and the Class Members are entitled to damages and/or injunctive relief as a result of Defendant's conduct.

50.    Plaintiff's claims are typical of the claims of the class because of the similarity, uniformity, and common purpose of Defendant's unlawful conduct. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

51.    Plaintiff is an adequate representative of the class he seeks to represent and will fairly and adequately protect the interests of that class.

52.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent them.

53.    There is no hostility between Plaintiff and the unnamed class members.

54.    Plaintiff anticipates no difficulty in the management of this litigation as a class action.

55.     To prosecute this case, Plaintiff has chosen the undersigned law firms, which are experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

56.     The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.

57.     All claims by Plaintiff and the unnamed class members are based Cricket's sale of CDMA handsets to the consuming public when it knew, or reasonably should have known and failed to disclose that these handsets would be inoperable upon completion of the AT&T merger.

58.     Common issues predominate where, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

59.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

60.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

> (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.   As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

## VI.   **CAUSES OF ACTION**

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

61.   Plaintiff incorporates by reference paragraphs 1 through 60 above, as if each and every allegation is set forth fully herein.

62.   At all relevant times, Cricket was a merchant with respect to the CDMA handsets.

63.   Plaintiff purchased his now inoperable CDMA handset from an authorized agent of Cricket.  At the time of purchase, Cricket and it authorized agents were in the business of selling CDMA handsets and/or by course of business held itself out as having special knowledge or skill regarding those handsets.

64.   A warranty that the CDMA handsets were in merchantable condition was implied by law in the sale of these handsets by Cricket and its agents.

65.     The  CDMA handsets which Cricket and its authorized agents sold to Plaintiff and other members of the class were not in merchantable condition and are not fit for the ordinary purpose for which handsets are used and/or were not of the same quality of those generally acceptable in the trade.

66.     In fact, the CDMA handsets sold by Cricket and its authorized agents, including the Samsung Galaxy 4S sold to Plaintiff, were unmerchantable.

67.     Specifically, Cricket knew and failed to disclose that these CDMA handsets would be inoperable as a result of the AT&T acquisition and Cricket's plan to convert to the GSM network.  As a result, the CDMA handsets had an artificially limited useful life.

68.     Plaintiff and other members of the Class have had sufficient direct dealings with either Cricket or its authorized agents to establish vertical privity of contract between themselves and Defendant.  Nevertheless, privity is not required in this case because Plaintiff and the other members of the Class are intended third- party beneficiaries of contract between Cricket and its authorized agents.  Specifically, Plaintiff and the other members of the Class are the intended beneficiaries of Cricket's implied warranties.  Cricket's authorized agents were not intended to be the ultimate consumers of the CDMA handsets.

**COUNT II**
**FRAUDULENT CONCEALMENT**

69.     Plaintiff incorporates by reference paragraphs 1 through 60 above, as if each and every allegation is set forth fully herein.

14

70.     As set forth above, Cricket knew and failed to disclose and/ or suppressed and/or concealed material facts concerning the CDMA handsets, including the Samsung Galaxy 4S, which it sold to Plaintiff and other members of the class.

71.     These concealed facts were material because they directly impacted the reliability and use of the handsets.

72.     Cricket owed Plaintiff and the other members of the Class a duty to disclose that the CDMA handsets would be rendered inoperable by the AT&T acquisition and Cricket's plans to convert to the GSM network because it possessed exclusive and superior knowledge and access to these facts.

73.     Cricket knew and failed to disclose that the CDMA handsets had an artificially limited useful life and that the CDMA handsets were not compatible with AT&T's GSM cellular network.

74.     Cricket actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other members of the Class to purchase the CDMA handsets from Cricket and its authorized agents and to pay more than they otherwise would have paid had these material facts that the CDMA handsets would be inoperable as a result of the AT&T acquisition and Cricket's plans to convert to the GSM network been disclosed.

75.     Cricket's conduct was oppressive, fraudulent, malicious and in reckless disregard of the rights of Plaintiff and the Class.

76.     Plaintiff and the other members of the Class were not aware of the omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

77.     As a result of Cricket's concealment and/or suppression of material facts concerning the CDMA handsets, Plaintiff and the Class have sustained damages.

## COUNT III
## MONEY HAD AND RECEIVED/UNJUST ENRICHMENT

78.     Plaintiff incorporates herein by reference as though fully set forth the allegations in paragraphs 1 through 60 of this Complaint, as if each and every allegation is set forth fully herein.

79.     As set forth above, Cricket charged and collected payments for CDMA handsets that would become inoperable in amounts that exceeded the value of these CDMA handsets, which conferred a substantial benefit on Cricket.

80.     Cricket was aware of, and had knowledge of, this substantial benefit.

81.     By doing so, Cricket has come into the possession of money in the form of payments that it had, and has no right to at law or in equity.

82.     It would be inequitable for Cricket to retain any such monies that it had no legal right to charge.

83.     As a consequence, Named Plaintiff and the members of the Class have been damaged.

## COUNT IV
## <u>NEGLIGENT MISREPRESENTATION</u>

84.     Plaintiff incorporates herein by reference as though fully set forth the allegations in paragraphs 1 through 60 of this Complaint, as if each and every allegation is set forth fully herein.

85.     Cricket and its agents or employees negligently made the false and misleading representations and omissions alleged herein, including but not limited to the representations that its CDMA handsets would pass without objection in the trade under the contract description and that the CDMA handsets sold were compatible with and would continue to be compatible with Cricket's CDMA's cellular service for the useful life of the handset.

86.     Cricket's agents or employees negligently failed to disclose the material fact that its handsets would become inoperable during its useful lifespan.

87.     Cricket's agents or employees negligently failed to disclose that the prices of the CDMA handsets did not accurately represent its value, intending that Plaintiff and the Class would reasonably rely upon the false and misleading representations and omissions to their detriment, which they did.

88.     As a direct and proximate result of Cricket's negligent statements, representations, and omissions, Plaintiff and the Class were induced, *ab initio*, to purchase a CDMA handset from Cricket for a price significantly higher than they were worth.

89.     Cricket, their agents or employees, owed a duty of care to Plaintiff and the Class.

90.     Cricket recklessly and negligently breached the duty of care they owed to Plaintiff and the Class by making negligent representations to Plaintiff and the Class and negligently concealing material facts from them, as set forth herein.

91.     Cricket knew, or had reason to know, that Plaintiffs and the Class would reasonably rely on the representations and concealments which if erroneous, would cause loss, injury or damage.

92.     Plaintiff and the Class justifiably and reasonably took actions to their detriment as alleged herein, by paying Cricket significantly more for their CDMA handsets than they were worth, in reliance on the negligent representations and concealments.

## COUNT V
## MARYLAND CONSUMER PROTECTION ACT

93.     Plaintiff incorporates herein by reference as though fully set forth the allegations in paragraphs 1 through 60 of this Complaint, as if each and every allegation is set forth fully herein.

94.     Cricket is a merchant within the meaning of the *Maryland Consumer Protection Act* ("MCPA"), MD. CODE ANN., COMM. LAW § 13-101(g), and is subject to all of the MCPA's provisions prohibiting unfair or deceptive trade practices including those in MD. CODE ANN., COMM. LAW §§ 13-303 and 13-301.

95.     Cricket's failure to disclose and its concealment from Plaintiff and members of the Class of the material facts as set forth herein constitutes unfair and deceptive trade practices in violation of the MCPA, §§ 13-303 and 13-301(1), (2)(i) and (iv) and (3).   If Plaintiff and

members of the Class had known the material facts related to the CDMA handsets, they would not have purchased the handsets or would have required a significantly lower price.

96.     On information and belief, Plaintiff avers that Cricket systematically sold CDMA handsets during the Class Period which were not compatible with AT&T's GSM cellular network and retailed these CDMA handsets to the public without disclosing the impending inoperability of the handsets to its customers, in violation of the MCPA, in order to illegally increase its profits.

97.     Cricket's acts and omissions as aforesaid, including its failure to disclose and concealment of the material facts, and its affirmative misrepresentation to Named Plaintiff and the Class, tended to and did deceive Plaintiff and members of the Class and constitutes an unfair and deceptive trade practice, in violation of MCPA §§ 13-303(1) - (3) and 13-301(1), (2)(i) and (iv), and/or (3).

98.     As a result of Cricket's unfair and deceptive trade practices, Named Plaintiff and the Class agreed to and did purchase their CDMA handsets, Plaintiff paid Cricket significantly more for their CDMA handsets than they were worth, and Named Plaintiff and the Class sustained the other damages and losses set forth above.

## COUNT VI
## FRAUD

99.     Plaintiff incorporates herein by reference as though fully set forth the allegations in paragraphs 1 through 60 of this Complaint, as if each and every allegation is set forth fully herein.

100.    Cricket and its authorized agents falsely represented to Plaintiff and other members of the Class that the CDMA handsets would be supported by Cricket for the useful life of the product.  But for this representation, which Cricket and its authorized agents knew, or should have known, was false, Plaintiff and the other members of the Class would not have bought the CDMA handsets from Cricket. Moreover, but for this false representation, Plaintiff and the other members of the Class would not have then made a separate purchase from Cricket for the CDMA wireless service plan.

101.    Defendant failed to disclose material information that Cricket would not continue to support the CDMA handsets as a result of the AT&T acquisition and that the CDMA handsets were not compatible with AT&T's GSM cellular network.

102.    Defendant made these false and misleading representations and omissions knowingly, recklessly, and/or without regard for their truth or falsity, and with the intent to induce Plaintiff and other members of the Class to rely upon them by  purchasing a CDMA handset from Cricket.

103.    Plaintiff and the other members of the Class justifiably relied upon the false representations and omissions made by Defendant by purchasing the CDMA handset from Cricket's authorized agent and then by purchasing a wireless service agreement from Cricket thereafter.

104.    As a direct and proximate result of the reliance upon the false representations and omissions of Defendant, Plaintiff and  the other members of the Class have suffered damages, including, but not limited to, the loss of the use of the CDMA handsets and the loss of their market value, well prior to the end of the useful life of these cell phones.

105.    Because of the willful and wanton conduct of Defendant, Plaintiff and the other members of the Class are entitled to punitive, as well as actual, damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly situated individuals, demands judgment against Defendant as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the Class;

(2)    Requiring Defendant to replace the CDMA handsets with comparable GSM handsets free of charge;

(3)    Awarding actual damages to Plaintiff and the Class;

(4)    Awarding punitive damages to Plaintiff and the Class under Counts II, IV and VI;

(5)    Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of counsel and experts, and reimbursement of expenses;

(6)    Awarding pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and the Class; and

(7)    Awarding such other and further relief the Court deems just and equitable.

Respectfully submitted,

**Z LAW, LLC**

Dated: March 31, 2015

_____/s/____28191_____
Cory L. Zajdel (Fed. Bar No. 28191)
301 Main Street, Ste. 2-D
Reisterstown, MD 21136
(443) 213-1977
clz@zlawmaryland.com

Oren S. Giskan (pending *pro hac vice*)
Catherine E. Anderson (pending *pro hac vice*)
Giskan Solotaroff Anderson & Stewart, LLP
11 Broadway, Suite #2150
New York, NY 10004
(212) 847-8315

**Attorneys for Plaintiff**

## DEMAND FOR JURY TRIAL

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

_____/s/____28191_____
Cory L. Zajdel (Fed. Bar No. 28191)