IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TIM BOND,                          *

    Plaintiff,                  *

       v.                      *       CIVIL NO.: WDQ-15-923
                              *

CRICKET COMMUNICATIONS,
LLC,                               *

    Defendant.                  *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

    Tim Bond filed a putative class action complaint against
Cricket Communications, LLC ("Cricket") for violations of
Maryland law.  ECF No. 3.[1]  Pending is Cricket's motion to compel
arbitration, and to stay proceedings pending the outcome of
arbitration.  ECF No. 15.  No hearing is necessary.  Local Rule
105.6 (D. Md. 2014).  For the following reasons, Cricket's
motion will be granted.

---

[1] Bond asserts the following claims: breach of implied warranty
of merchantability (count one); fraudulent concealment (count
two); unjust enrichment (count three); negligent misrepresen-
tation (count four); violation of the Maryland Consumer
Protection Act, Md. Code Ann., Comm. Law § 13-301, *et seq.* (West
2010) (count five); and fraud (count six).  ECF No. 3 at 13-20.

I.   Background[2]

On December 20, 2013, Bond bought a Samsung Galaxy S4 cellular telephone ("Galaxy S4" or "telephone") from an authorized Cricket agent; that day, he activated Cricket wireless cellular service.  ECF Nos. 3 ¶¶ 29-30; 15-2 ¶¶ 6-7.[3] The outside of the box stated: "Use of phone requires purchase of Cricket® service, which must be purchased separately.  By activating Cricket® service, you agree to the enclosed terms and conditions of the service [the "Service Agreement"]."  ECF No. 15-5 at 2.[4]

The first paragraph of the Service Agreement states that "[t]hese Terms and Conditions of Service constitute an agreement . . . between you and the provider of your Cricket *service* and

---

[2] The facts are from the complaint, and exhibits attached to Cricket's motion and Bond's response.  ECF Nos. 3, 15, 16.

[3] Bond received two receipts; one for the cellular telephone, and one for the wireless service agreement.  ECF No. 3 ¶ 31.

[4] The second paragraph of the Service Agreement states:

> IMPORTANT: WHEN YOU START SERVICE OR USE THE SERVICE
> BY, FOR EXAMPLE, PLACING A CALL, SENDING A MESSAGE OR
> TRANSMITTING DATA ON THE CRICKET WIRELESS SYSTEM OR
> ANOTHER SYSTEM THAT'S AGREED TO CARRY OUR SERVICES,
> YOU INDICATE YOUR ACCEPTANCE OF THIS AGREEMENT. IN
> ADDITION, EACH TIME YOU PAY FOR SERVICE FROM US, YOU
> CONFIRM YOUR ACCEPTANCE OF THIS AGREEMENT. IF YOU DO
> NOT WANT TO ACCEPT THIS AGREEMENT, DO NOT START
> SERVICE OR USE THE SERVICE AND RETURN YOUR WIRELESS
> DEVICE . . . FOR A REFUND

ECF No. 15-6 at 6, ¶ 1(b) (boldface omitted).

2

contain *an arbitration clause* and other clauses which may affect

your legal rights." ECF No. 15-6 at 6, ¶ 1(a) (emphasis added).[5]

Under the arbitration clause:

> [a]ny past, present or future claim, dispute or
> controversy ("Claim") by either you or us against the
> other, . . . arising from or relating in any way to
> this Agreement or Services provided to you under this
> Agreement, including (without limitation) statutory,
> tort and contract Claims and Claims regarding the
> applicability of this arbitration clause or the
> validity of the entire Agreement shall be resolved
> upon the election by you or us, by binding
> arbitration.

*Id.* at 9-10, ¶ 20(c) (the "Arbitration Clause"). Users could

opt out of the Arbitration Clause by sending Cricket written

notice within 60 days of activating wireless service. *Id.* at 9,

¶ 20(b). Bond did not opt out. ECF No. 15-2 ¶ 16.

When he bought the telephone, Bond was unaware that, on

July 12, 2013, AT&T Inc. ("AT&T") had acquired Cricket. *Id.* ¶¶

1, 23, 26; ECF No. 16-1 ¶ 10. As part of the acquisition, AT&T

planned to move customers from Cricket's "CDMA"[6] network to

AT&T's "GSM"[7] network. ECF No. 3 ¶ 24. The Galaxy S4 uses CDMA

technology. *Id.* ¶ 30. Thus, in early 2015, Bond learned that

---

[5] *See also* ECF No. 15-6 at 6, ¶ 1(a) ("This [Service] Agreement
governs the sale and delivery of wireless service(s) . . . to
you by Cricket.")

[6] "CDMA" stands for "Code Division Multiple Access." *Id.* ¶ 19.

[7] "GSM" stands for "Global Systems for Mobile [C]ommunications."
*Id.*

his telephone would no longer be able to access Cricket wireless service. *Id.* ¶ 33; ECF No. 16-1 ¶ 9.

In February 2015, Bond visited a Cricket store to inquire about continued use of his Galaxy S4. ECF No. 16-1 ¶ 11. While he was there, a Cricket representative turned his telephone off, and told him that he had to buy another cellular telephone to access AT&T's GSM network. ECF Nos. 3 ¶ 38; 16-1 ¶ 11.[8] Bond has since been unable to use his Galaxy S4 on AT&T's--or several other service providers'--networks. ECF Nos. 3 ¶ 38; 16-1 ¶ 14.

On March 31, 2015, Bond filed a putative class action complaint against AT&T. ECF No. 1.[9] On May 8, 2015, Bond amended his complaint to substitute Cricket as the defendant. ECF No. 3.[10] On July 13, 2015, Cricket moved to compel

---

[8] Cricket offered Bond a $40 credit towards the purchase of a new phone. ECF No. 16-1 ¶ 12.

[9] This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(2012). Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The Court also has diversity jurisdiction because the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1132(a)(1); ECF No. 3 ¶ 14.

[10] The crux of Bond's amended complaint is that Cricket sold him a CDMA cellular telephone with knowledge, and without disclosing to Bond and other customers, that CDMA service would be discontinued. *See* ECF No. 3 ¶¶ 3-9, 26-28, 68, 71-75, 80, 86, 96-97, 101-02.

arbitration, and to stay proceedings pending the outcome of arbitration.  ECF No. 15.  On August 14, 2015, Bond opposed the motion.  ECF No. 16.  On September 4, 2015, Cricket replied. ECF No. 17.

## II. Analysis

### A.   Legal Standard

In the Fourth Circuit, a court may compel arbitration under the Federal Arbitration Act ("FAA")[11] when the movant demonstrates "a written agreement that includes an arbitration provision which purports to cover the dispute."    *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).   That inquiry has two aspects: the existence and validity of an agreement, and the scope of arbitrable issues under that agreement.  *See Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812-13 (4th Cir. 1989) ("In making this determination, a court must focus on whether or not the company was bound to arbitrate, as well as what issues it must arbitrate.") (internal quotation marks, citation, and alteration omitted).

Bond appears to contest the existence of an agreement to arbitrate.  *See* ECF No. 16 at 6 (placing the burden on Cricket to prove an agreement).  Bond concedes that he is bound by the

---

[11] 9 U.S.C. § 1, *et seq.* (2012).

Arbitration Clause; however, he argues that the Arbitration Clause applies solely to Cricket's wireless services, not his purchase of the Galaxy S4, and the amended complaint "relates only to the sale of goods," not the "purchase and provision of wireless cellular services." *Id.* at 2, 4, 12-18.   Nonetheless, Bond also characterizes the issue as whether his claims are "within the *scope* of the . . . [A]rbitration [Clause]," and as "whether the claims alleged in the [Amended] Complaint are subject to the [Arbitration Clause]." *Id.* at 2, 9 (emphasis added).

Thus, on the one hand, Bond asserts that the Court must decide whether there is an agreement; yet, on the other hand, Bond asserts that the Court must interpret the scope of the Arbitration Clause.   As Cricket contends,[12] the latter assertion identifies the appropriate inquiry.   Because the parties have agreed to arbitrate "*some* matters pursuant to [the Arbitration Clause]," the Court must decide whether Bond's claims are within its scope. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298, 130 S. Ct. 2847, 2857, 177 L. Ed. 2d 567 (2010) (internal quotation marks omitted).

"[T]he examination of the scope of an arbitration agreement is primarily a task of contract interpretation." *Cara's*

---

[12] *See* ECF No. 17 at 7-8, 17-18.

*Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). Thus, the Court must "give effect to the intentions of the parties as expressed in their agreement." *Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) (*citing Cara's Notions*, 140 F.3d at 569). Ambiguities about the scope of an arbitration clause must be resolved in favor of arbitration. *See Granite Rock Co.*, 561 U.S. at 298, 130 S. Ct. 2847; *Schmidt*, 445 F.3d at 767.[13] Arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Peoples Sec. Life Ins. Co.*, 867 F.2d at 812.

B.   Cricket's Motion

Cricket argues that the Arbitration Clause is sufficiently broad to cover Bond's claims. ECF No. 17 at 8-10. Bond argues that his claims "in no way arise from or relate to" Cricket's wireless services, and his "claim[s] would exist had [he]

---

[13] *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)(the FAA reflects the strong federal policy favoring arbitration; doubts about the scope of arbitration "should be resolved in favor of arbitration"); *Noohi v. Toll Bros.*, 708 F.3d 599, 611 n.6 (4th Cir. 2013) (the presumption in favor of arbitration applies when the issue is the scope of an arbitration provision, not its validity); *Beltway Capital, LLC v. Mortgage Guar. Ins. Corp.*, No. CIV.A. WMN-11-376, 2011 WL 2066603, at *4 (D. Md. May 25, 2011) ("[A]rbitration clauses [should] be construed very broadly . . . even when parties have only agreed to arbitrate some matters pursuant to an arbitration clause.") (internal quotation marks and citation omitted).

decided never to activate Cricket wireless cellular services."
ECF No. 16 at 13-15, 17 n.3.

Here, the Arbitration Clause applies to "[a]ny . . . claim
. . . arising from or relating in any way to this [Service]
Agreement or Services provided to you under this Agreement,
including (without limitation) statutory, tort and contract
[c]laims."  ECF No. 15-6 at 9-10, ¶ 20(c).  The U.S. Supreme
Court and the Fourth Circuit have consistently characterized
similar language as "broad,"[14] and covering "every dispute
between the parties having a significant relationship to the
contract regardless of the label attached to a dispute."[15]

Bond's claims bear a significant relationship to the
Service Agreement.  Every count in the amended complaint is
replete with references to Cricket's knowledge of AT&T's
discontinuation of CDMA service; thus, Bond's claims "relat[e] .

---

[14] *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88, 93 (4th Cir. 1996) (clause required arbitration of
"any dispute that 'ar[ose] out of or related to' [a] consulting
agreement") (*citing Prima Paint Corp. v. Flood & Conklin Mfg.
Co.*, 388 U.S. 395, 398, 87 S. Ct. 1801, 1803, 18 L. Ed. 2d 1270
(1967)(clause required arbitration of "[a]ny controversy or
claim arising out of or relating to this Agreement")); *J.J. Ryan
& Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th
Cir. 1988) (clause required arbitration of "[a]ll disputes
arising in connection with" an agreement).

[15] *Schmidt*, 445 F.3d at 767; *see also Long v. Silver*, 248 F.3d
309, 316-17 (4th Cir. 2001) (when agreement required arbitration
of any dispute "arising out of or relating to" agreement, the
"governing standard" is whether the claims have a "significant
relationship" thereto).

. . to [the Service] Agreement" under which he obtained CDMA

service. *See* ECF No. 3 ¶¶ 3-9, 26-28, 68, 71-75, 80, 86, 96-97,

101-02.  Bond's argument that his claims are independent of

Cricket's provision of wireless cellular service is

unpersuasive;[16] Bond activated Cricket's wireless cellular

service, thereby entering into the Service Agreement, the same

day he bought the Galaxy S4.  *Id.* ¶¶ 29-30.  His putative class

action complaint is predicated on the abandonment of that

wireless service.  *See Am. Recovery Corp.*, 96 F.3d at 94 (claim

was arbitrable when it was "rooted in the existence and terms of

the consulting agreement").[17]  Bearing in mind the strong federal

policy favoring arbitration,[18] the Court cannot conclude "that

the [A]rbitration [C]lause is not susceptible of an

---

[16] *See* ECF No. 16 at 3 (noting that Bond could use his Galaxy S4
"as an internet connected device" without wireless cellular
service, and that the telephone had other features he could use
offline).

[17] *Cf. Schmidt*, 445 F.3d at 768 (arbitration clause contained in
a Promissory Note did not govern the plaintiff's claims when
resolution of those claim "require[d] no inquiry into the Note's
terms, nor even knowledge of the Note's existence"); *Peoples
Sec. Life Ins. Co.*, 867 F.2d 813 (district court erred in
construing arbitration clause "that provided for arbitration of
any issue 'believed to constitute a *breach or violation*'" of an
agreement as excluding claims related to the *formation* of the
agreement) (emphasis added).

[18] *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25, 103 S. Ct.
927.

interpretation that covers [Bond's claims]."[19]  Accordingly,
Cricket's motion to compel arbitration will be granted.

III. Conclusion

For the reasons stated above, Cricket's motion to compel
arbitration will be granted.  The suit will be stayed--and
administratively closed--pending the outcome of arbitration.[20]

_1/12/16_
Date

William D. Quarles, Jr.
United States District Judge

---

[19] *Peoples Sec. Life Ins. Co.*, 867 F.2d at 812.

[20] The FAA authorizes parties to demand a stay of a federal court
proceeding pending exercise of a contractual right to arbitrate.
*See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir.
2001) (*citing Maxum Founds., Inc. v. Salus Corp. .*, 779 F.2d
974, 981 (4th Cir. 1985); 9 U.S.C. § 3 (1999)).