IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIM BOND, on his own behalf  *
and on behalf of all others
similarly situated           *

        Plaintiffs    *

        vs.           *   CIVIL ACTION NO. MJG-15-923

CRICKET COMMUNICATIONS, LLC  *

        Defendant     *

\*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM AND ORDER RE: INTERVENE</u>

The Court has before it Michael Scott's Motion to Intervene [ECF No. 42] and the materials submitted relating thereto. The Court has considered the materials submitted by the parties and finds a hearing unnecessary.

## I. <u>BACKGROUND</u>

Plaintiff, Tim Bond ("Bond") filed this putative class action against Defendant Cricket Communications, LLC ("Cricket")[1] on May 8, 2015. On September 24, 2015, Michael A. Scott ("Scott") filed a putative class action against Cricket in the

---

[1] Bond's initial Class Action Complaint [ECF No. 1] was filed on March 31, 2015 against AT&T Inc. ("AT&T"), but Bond substituted Cricket as Defendant in the First Amended Class Action Complaint [ECF No. 3] on May 8, 2015. AT&T announced its agreement to acquire Cricket Communications Inc. on July 12, 2013. After acquiring Cricket Communications Inc., AT&T formed Cricket Communications, LLC to carry on the business of the former company.

1

Circuit Court for Baltimore City. Scott's lawsuit was removed to this Court, remanded back to state court, appealed, and then remanded back to federal court. Scott now seeks to intervene in Bond's lawsuit on his own behalf and on behalf of the certified class he represents. A more detailed discussion of the factual and procedural background for both cases will provide relevant context for the instant determination.

A. <u>Factual Background</u>[2]

After its acquisition by AT&T in 2013, Cricket offered for sale and sold cellphones[3] that operate exclusively on a 3G CDMA[4] cellular network. However, AT&T and Cricket had decided to discontinue the CDMA network and require Cricket customers to use AT&T's GSM[5] cellular network. The cellphones cost hundreds of dollars each and were marketed as including "unsurpassed nationwide coverage." Class Action Compl. ¶¶ 26-28, ECF No. 2, GLR-15-3330 ("Scott Compl."). But the cellphones sold by Cricket cannot be transferred from the CDMA network to the GSM network. The cellphones were also "locked" by Cricket so they

---

[2] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.
[3] Both Bond and Scott refer specifically to Samsung Galaxy S4 mobile telephones.
[4] CDMA refers to Code Division Multiple Access technology.
[5] GSM refers to Global Systems for Mobile technology.

cannot be used on another cellphone service provider's network. In other words, the cellphones became useless and worthless.

   B.   Bond's Lawsuit

Bond initially filed his lawsuit on March 31, 2015 against AT&T, but amended his complaint on May 8, 2015 to substitute Cricket as the Defendant. Class Action Compl., ECF No. 1, First Am. Class Action Compl. ("FAC"), ECF No. 3. Bond seeks to represent a class defined as "[a]ll persons nationwide during the period July 12, 2013 to the present who purchased a CDMA handset from Cricket or through its authorized agents." FAC ¶ 41. In the FAC, Bond alleged six causes of action:

- Count I – Breach of Implied Warranty of Merchantability
- Count II – Fraudulent Concealment
- Count III – Money Had and Received/Unjust Enrichment
- Count IV – Negligent Misrepresentation
- Count V – Maryland Consumer Protection Act
- Count VI – Fraud

On July 13, 2015, Cricket moved to compel arbitration and stay proceedings pending the outcome of arbitration. Mot. Compel, ECF No. 15. Judge Quarles of this Court granted the motion on January 12, 2016 and stayed the case pending the

outcome of arbitration. Mem. Opinion and Order, ECF Nos. 18, 19.

Neither Bond nor Cricket initiated arbitration. Almost a year later, on December 9, 2016, Bond contacted Cricket's counsel to request consent for leave to amend the complaint. After receiving no response, Bond contacted Cricket's counsel again on January 12, 2017 and was notified that Cricket would not consent. On February 17, 2017, Bond filed a Motion Requesting Leave to File Second Amended Class Action Complaint [ECF No. 21], which added Count VII for Violations of the Magnusson-Moss Warranty Act ("MMWA"). Although Counts I through VI remained in the proposed Second Amended Class Action Complaint ("SAC"), Bond stated his understanding that those causes of action were subject to arbitration but that he could not be compelled to arbitrate the MMWA claim. Mot. Leave 2-3, ECF No. 21.

After the parties met and conferred concerning Bond's motion, on February 24, 2017, Bond and Cricket filed the Stipulation Concerning Plaintiff's Motion for Leave to File Second Amended Complaint [ECF No. 26]. Therein, the parties agreed to the following:

- Bond agreed to seek leave to file his SAC solely to pursue a new claim under the federal MMWA,

- Bond agreed that he was bound to arbitrate Counts I through VI and would not re-litigate any facts or introduce any new evidence related to arbitration or other subject and would not seek to reopen Counts I to VI,

- Bond agreed that it would respond to Cricket's intended new motion to compel arbitration only on the grounds that the MMWA does not permit the claim to be arbitrated, and

- Cricket agreed to not object to the stay being lifted for the sole purpose of allowing Bond to pursue the new MMWA claim.

Id. The Court approved the Stipulation and granted Bond's request to file the SAC. See ECF Nos. 27, 28, 29. On May 2, 2017, Cricket filed a Motion to Compel Arbitration [ECF No. 34], and Bond responded accordingly.

Bond and Cricket engaged Judge Benson Everett Legg (Ret.) to mediate a class-wide settlement. Negotiations were conducted at arms-length. Legg Ltr., ECF No. 43-2. The first mediation session was held on May 5, 2017, followed by a second session by telephone on August 2, 2017, and agreement in principle was ultimately achieved on August 5, 2017. Id. Thereafter, a letter was filed with this Court advising that a settlement agreement in principle had been reached, which would resolve the claims of a proposed nationwide class. Ltr., ECF No. 41. In the letter, Cricket advised the Court:

> Cricket will soon file a notice of related case in Scott v. Cricket Communications, LLC, No. 15-cv-3330 (D. Md.), identifying

5

> Scott as related to this case. Because the
> proposed nationwide class settlement in Bond
> will cover all of the claims at issue in
> Scott, Cricket intends to move for a partial
> stay of proceedings in Scott.

Id. The parties also requested that the Court defer ruling on the pending motion to compel arbitration in Bond's lawsuit. Id.

On August 24, Scott filed the instant motion seeking to intervene in this case "on behalf of himself and on behalf of the certified class of Maryland citizens he represents . . . ." Mot. 1, ECF No. 42. The Motion is now ripe for decision.

### C. Scott's Lawsuit

Scott filed his lawsuit on September 24, 2015 in the Circuit Court for Baltimore City. Scott Compl. Scott defines the class as "[a]ll Maryland citizens who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket which was locked for use only on Cricket's CDMA network." Id. at ¶ 51. Scott raises a single claim for violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., stemming from alleged breaches of express warranties and the implied warranties of merchantability and fitness for a particular purpose. Id. ¶¶ 60–66.

On October 30, 2015, Cricket removed the case to federal court under the Class Action Fairness Act ("CAFA"), averring

that "[r]ecords of Cricket's sales indicate that Cricket sold at least 50,000 CDMA mobile telephones that were shipped to and activated in Maryland between July 12, 2013 and March 13, 2014." Notice of Removal 3, ECF No. 1, GLR 15-1330. On November 20, 2015, Cricket notified the Court that the Bond lawsuit was a related case. Notice of Related Case, ECF No. 14, GLR-15-3330.[6]

On November 23, 2015, Scott filed a motion to remand the case back to the Circuit Court for Baltimore City. Motion to Remand, ECF No. 15, GLR-15-3330. Scott argued that removal was improper because Cricket had not used the proper class definition to allege CAFA jurisdiction, <u>i.e.</u>, Scott had proposed a class limited to Maryland citizens only, but Cricket described a class of "persons whose phones were shipped to and activated in Maryland." Mem. 9, ECF No. 15-1, GLR-15-3330. On December 16, 2015, Cricket filed its Motion to Compel Arbitration [ECF No. 20, GLR-15-3330].[7]

---

[6] Cricket followed up on December 2, 2015 with a Motion to Relate Case [ECF No. 16, GLR-15-3330]. Scott filed a response [ECF No. 17, GLR-15-3330] indicating that he had no objection to assigning both cases to the same Judge but otherwise disagreed that the cases were "related."

[7] On November 10, 2015, Scott had filed a Complaint Petitioning to Stay Threatened Arbitration in the Circuit Court for Baltimore County, Maryland. ECF No. 2, GLR-15-3759. On December 9, 2015, Cricket removed that case to this Court and it was filed as a related case to GLR-15-3330. ECF No. 1, GLR-15-3759. On December 2, 2015, Cricket moved to dismiss or stay the related case in GLR-15-3759, and on December 21, 2015, Scott filed a motion to remand the case back to state court.

7

On August 19, 2016, Judge Russell of this Court granted Scott's motions to remand and denied Cricket's motions as moot. Judge Russell determined that Cricket had failed to carry its evidentiary burden to present sufficient facts to prove federal jurisdiction because the proposed class includes only Maryland <u>citizens</u>, but Cricket's evidence pertained only to Maryland <u>residents</u>. Mem. Opinion 18, ECF No. 33, GLR-15-3330.

On August 29, 2016, Cricket filed a petition for permission to appeal to the Fourth Circuit Court of Appeals.[8] On November 8, 2016, the Fourth Circuit Court of Appeals issued an Order that deferred ruling on the petition pending briefing and further consideration of the merits of the appeal. Order, ECF No. 38, GLR-15-3330.[9] After briefing and oral argument, the Fourth Circuit issued its Judgment on July 28, 2017, vacating the District Court's judgment and remanding for further

---

[8] Remand orders are generally not subject to appeal, but there is a limited exception in CAFA cases. Under CAFA, "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." 28 U.S.C. § 1453(c)(1). If the appeal is accepted, the court of appeals must "complete all action on such appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted" by agreement for any period of time or for up to 10 days for good cause shown. § 1453(c)(2)-(3).

[9] A briefing schedule was issued in Appeal No. 16-2300, <u>Scott v. Cricket Communications, LLC</u>, and the petition, No. 16-3051, was placed in abeyance.

8

proceedings. Judgment, ECF No. 39, GLR-15-3330.[10] On the same day, the Fourth Circuit also granted the petition for permission to appeal. Order, ECF No. 40, GLR-15-3330.

During the pendency of the appeal, Scott's underlying case moved forward in the Circuit Court for Baltimore City. Scott moved to lift the stay that had been imposed by agreement of the parties, and the motion was granted on February 3, 2017. Cricket filed a motion to compel arbitration in Baltimore City, and it was denied on May 11, 2017. Scott then filed the motion for class certification, which was granted on June 9, 2017 as follows:

> [A]ll Maryland citizens who, between July 12, 2013 and March 13, 2014, purchased a Code Division Multiple Access ("CDMA") mobile telephone from Cricket Communications, LLC ("Cricket"),which was locked for use only on Cricket's CDMA network.

Mot. Mem 5, ECF No. 42-1. After the Fourth Circuit's opinion was issued, on July 28, 2017, Scott amended the complaint in Baltimore City to include both the certified class of Maryland citizens, and a putative nationwide class defined as:

> All persons within the United States who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket, which was locked for use only on Cricket's CDMA network.

---

[10] In a published decision, Scott v. Cricket Communications, LLC, 865 F.3d 189 (4th Cir. 2017).

9

Id.

Scott's District Court lawsuit was reopened on August 9, 2017. On August 11, 2017, Cricket filed a renewed notice of removal in GLR-15-3330, a motion to vacate the state court class certification order, a motion to vacate the state court order denying Cricket's motion to compel arbitration, a motion to compel arbitration, a motion to stay proceedings in part, and a notice of Bond's related lawsuit and that a settlement in principle had been reached therein. Also on August 11, 2017, Scott petitioned the Fourth Circuit for a rehearing, which stayed the mandate pending decision, and Scott filed a motion for entry of Administrative Order Number 1, which would provide potential class members notice of the lawsuit.

On August 25, 2017, the Fourth Circuit denied Scott's requested rehearing, and on September 5, 2017, the Fourth Circuit issued its mandate. On September 9, 2017, Scott filed a motion to remand his case back to state court and to strike the renewed notice of removal. The parties have briefed their motions, and all remain pending in GLR-15-3330.

II.  LEGAL STANDARD

Rule[11] 24 creates two intervention alternatives, both subject to the filing of a "timely motion."  Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989).  The Rule distinguishes between "Intervention of Right" pursuant to Rule 24(a), and "Permissive Intervention" pursuant to Rule 24(b).

In addition to being timely, the Fourth Circuit has explained that an intervenor must, under Rule 24(a)(2), satisfy three additional requirements: (1) it must demonstrate a sufficient interest in the subject matter of the underlying action; (2) it has to prove that the interest would be impaired if the intervention was not allowed; and (3) it must establish that the interest is inadequately represented by existing parties.  Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999)(citations omitted).

Permissive intervention under Rule 24(b)(2) gives the court discretion to grant intervention when an applicant "has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Id. at (b)(3).

---

[11]  All "Rule" references herein are to the Federal Rules of Civil Procedure.

III. DISCUSSION

Scott moves to intervene as of right, and alternately permissively. Under either alternative, the application for intervention must be timely, although "[w]here intervention is of right, 'the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive.'" Scardelletti v. Debarr, 265 F.3d 195, 203 (4th Cir. 2001), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002)(quoting Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981)). Both Bond and Cricket contend that Scott's motion for intervention is not timely.

In order to determine whether a motion to intervene is sufficiently timely, a trial court in this Circuit assesses factors including "how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene." Scardelletti, 265 F.3d at 203; Alt v. U.S. E.P.A., 758 F.3d 588, 591 (4th Cir. 2014). A district court has wide discretion in determining what is timely. Gould, 883 F.2d at 286. "In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene 'as soon as it became clear . . . that the interests of the unnamed class members would no longer be protected by the named class

representatives.'" Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir. 1982)(quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 394 (1977)).

The instant case has progressed to a settlement in principle "that would resolve the claims of a proposed nationwide class." Ltr. Aug. 11, 2017, ECF No. 41. The parties asserted in the letter that the proposed nationwide class settlement would cover all of the claims at issue in Scott's lawsuit. Id. Scott asserts that the filing of the letter was the first time he became aware of an interest being at risk. Scott contends that because he filed his motion to intervene within 20 days of the letter, his motion is timely.

Scott, however, knew about Bond's lawsuit no later than November 20, 2015 when Cricket filed the Notice of Related Case [ECF No. 14, GLR-15-3330] in Scott's case. Cricket's Notice stated that the allegations in the two complaints arise out of the same events, and both cases raise warranty claims although the causes of action are not identical. The Notice points out that the main difference is that Bond's alleged class is nationwide while Scott's alleged class is limited to Maryland customers. Scott made no response until Cricket's Motion to Relate Case [ECF No. 16, GLR-15-3330], which was filed on December 2, 2015. In his Response [ECF No. 17, GLR-15-3330],

13

Scott stated that he had no objection to the case being assigned to the same Judge, but disagreed that his lawsuit arises from the same events as Bond's because Scott's complaint challenges the sale of worthless cell phones to Maryland citizens only, while the Bond lawsuit is a putative federal nationwide class action.[12] Scott added that the causes of action were not duplicative since he alleged only an MMWA claim and Bond's lawsuit contained no MMWA claim. Regardless, Bond's case was compelled to arbitration in January 2016, and Scott pursued removing his case back to state court.

Since that time, Bond amended his Complaint to add an MMWA claim. Therefore, as of February 10, 2017, Scott knew, or should have known, that Bond's case included an MMWA cause of action, and as of February 24, 2017, Scott knew, or should have known, of the stipulation to lift the stay in Bond's case in order to litigate the MMWA claim. Scott could have intervened in February 2017, but chose to pursue his own case in state court. Scott's case has since been removed again to federal court, and on July 28, 2017, Scott amended his own Complaint to add a proposed nationwide class. Scott now faces motions to vacate the state court class certification, to compel

---

[12] The Court notes that having defined different classes does not equate with whether the two cases were both arising out of the same events. It is clear that both cases arise out of Cricket's sale of CDMA cellphones.

14

arbitration and to stay proceedings. It was not until August 24, 2017, after notice of the proposed settlement in Bond's case, that Scott moved to intervene.

Scott argues that Bond's case has barely been litigated even though it is the older of the two cases. But Bond's case has been through a formal arms-length settlement negotiation and the parties reached a settlement in principle. Bond's case, therefore, is near to final resolution, and there is no doubt that intervention at this time will cause delay and potential disruption of the negotiated settlement.

Scott does not adequately explain how his interests have now become no longer protected. Scott expresses concern that Cricket is engaging in a reverse auction, which can produce an inferior settlement. However, Scott's stated objective of protecting his interests, as well as the certified Maryland class,[13] can be satisfied by the opportunity to participate and object to the settlement in the fairness hearing[14] if he does not opt-out of the nationwide class. Scott can also choose to opt-

---

[13] There remains an open question of whether there will continue to be a Maryland certified class since there is a pending motion to vacate the state court decision that certified the class.
[14] A class action cannot be settled without the approval of the Court after a hearing "and on finding that it is fair, reasonable, and adequate." Rule 23(e)(2). Scott will have the opportunity to raise his concerns regarding collusion and inadequacy of the settlement during the approval process.

15

out of the settlement and continue to pursue his separate litigation against Cricket. Further, it is logical for Cricket to pursue settlement in the case with a nationwide class rather than the case limited to Maryland citizens, so its actions do not "smell" of targeting the most ineffectual attorneys or seeking easy resolution.

Under the circumstances of this case, Scott could have, and should have, acted sooner. Upon review of the timeliness factors, the Court finds that Scott's intervention motion was untimely and shall exercise its discretion to deny the motion. Scott may, of course, file objections to the proposed settlement in the ordinary course if and when preliminary approval of the proposed settlement is granted.

Cricket's and Bond's oppositions argue that even if the motion to intervene were considered timely, Scott has failed to establish the remaining elements for intervention under Rule 24. Because the Court determines that the motion is not timely, it need not address herein the remaining elements.

The bottom line is that intervention is being denied but Scott, as a class member, may participate in further proceedings herein relating to the settlement reached by Bond and Cricket.

IV. CONCLUSION

For the foregoing reasons:

1.  Michael Scott's Motion to Intervene [ECF No. 42] is DENIED.

2.  The Court shall defer ruling on Cricket's pending Motion to Compel Arbitration [ECF No. 34] pending settlement.

3.  Plaintiffs and Defendant shall proceed expeditiously regarding the settlement of the instant case and shall, by November 2, 2017, provide a status report stating the dates for further action regarding settlement approval procedures.

SO ORDERED, on Thursday, October 26, 2017.

/s/
Marvin J. Garbis
United States District Judge